UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| NICHOLAS TAYLOR, et al., | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) Case No. 4:22-cv-00201-SRC |
| | ) |
| CLARK EQUIPMENT COMPANY, et al., | ) |
| | ) |
| Defendant(s). | ) |

**Memorandum and Order**

Alleging Nicholas suffered severe injuries, including a crushed leg, when a fellow employee backed a Bobcat skid-steer loader into him, Nicholas and Melinda Taylor filed a lawsuit in state court against the employee operating the skid-steer, as well as two companies the Taylors claim were involved with the skid-steer's design, manufacture, or sale.  One defendant removed the case based on diversity jurisdiction, albeit acknowledging an obvious potential obstacle—the fact that Nicholas Taylor, Melinda Taylor, and the skid-steer operator are all Missouri citizens—and the Taylors moved to remand.  Determining whether the Court has subject-matter jurisdiction requires the Court to carefully navigate issues involving questions of both state and federal law.  Having done so, the Court concludes that it lacks subject-matter jurisdiction and remands the case to state court.

**I.      Background**

This case arises as a result of injuries Nicholas Taylor[1] suffered during an incident involving a Bobcat skid-steer loader.  Doc. 1-1 at ¶ 5.  Nicholas Taylor and his wife Melinda sued Brian Rozier (Nicholas's co-employee who was operating the Bobcat at the time of the

---

[1] The Court refers to the Taylors by first name to differentiate between the two, not to imply any familiarity.

incident); Sievers Equipment Company; and Clark Equipment Company, doing business as Bobcat Company (Bobcat).  The Taylors allege that Bobcat and Sievers designed, manufactured, rented, and sold the skid-steer.  Doc. 1-1 at ¶ 6.  The Taylors' state-court petition includes five counts:  (1) strict liability against Bobcat and Sievers; (2) strict liability—failure to warn against Bobcat and Sievers; (3) negligence against Bobcat; (4) negligence against Rozier; and (5) loss of consortium against all defendants.  Doc. 1-1.  Bobcat removed the case to this Court on the basis of diversity jurisdiction, 28 U.S.C. § 1332, arguing that the Taylors fraudulently joined Rozier, the non-diverse defendant.  Doc. 1.   the Taylors filed a motion to remand.  Doc. 15.

## II.     Standard

A defendant may remove to federal court any state court civil action over which the federal court could exercise original jurisdiction.  28 U.S.C. § 1441(a).  "The [removing] defendant bears the burden of establishing federal jurisdiction by a preponderance of the evidence."  *In re Prempro Prod. Liab. Litig.*, 591 F.3d 613, 620 (8th Cir. 2010).  Because "[t]he threshold requirement in every federal case is jurisdiction," the Eighth Circuit has admonished district courts "to be attentive to a satisfaction of jurisdictional requirements in all cases." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citation omitted).  "Federal courts are to resolve all doubts about federal jurisdiction in favor of remand and are strictly to construe legislation permitting removal."  *Dahl v. R.J. Reynolds Tobacco Co.*, 478 F.3d 965, 968 (8th Cir. 2007) (quotation marks omitted).  But when a federal court does have jurisdiction over a case properly before it, it has a "virtually unflagging obligation to exercise it."  *Holbein v. TAW Enterprises, Inc.*, 983 F.3d 1049, 1060 (8th Cir. 2020) (en banc) (quotation marks omitted).

## III.    Discussion

Bobcat argues that the Court could have exercised original jurisdiction over this case pursuant to 28 U.S.C. § 1332(a)(1), which provides that district courts "have original jurisdiction

2

of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States . . . ."

Diversity jurisdiction requires complete diversity of citizenship among the parties, meaning "no defendant holds citizenship in the same state where any plaintiff holds citizenship." *Little Otters of Love, LLC v. Rosenberg*, 724 F. App'x 498, 501 (8th Cir. 2018) (quoting *OnePoint Sols., LLC v. Borchert*, 486 F.3d 342, 346 (8th Cir. 2007)). "In the case of a removed action, diversity [of citizenship] must exist both when the state petition is filed and when the petition for removal is filed." *Knudson v. Sys. Painters, Inc.*, 634 F.3d 968, 975 (8th Cir. 2011) (quoting *Ryan ex rel. Ryan v. Schneider Nat. Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001)).

Here, unless an exception to this "time-of-filing" rule applies, Defendant Rozier's Missouri citizenship at the time the Taylors (also Missouri citizens) filed their petition in Missouri state court destroys diversity of citizenship. Bobcat argues that one such exception—fraudulent joinder—applies here. The Court disagrees. Bobcat also argues that "snap removal" defeats the Taylors' motion to remand, but as the Court explains below, the lack of diversity between the Taylors and Rozier renders Bobcat's snap-removal argument inapplicable.

  A.  **The Taylors did not fraudulently join Rozier.**

Fraudulent joinder serves as one exception to the time-of-filing rule. *Knudson*, 634 F.3d at 976. "[A] plaintiff 'cannot defeat a defendant's 'right of removal' by fraudulently joining a defendant who has 'no real connection with the controversy.'" *Id.* (quoting *Chesapeake & Ohio Ry. Co. v. Cockrell*, 232 U.S. 146, 152 (1914)). To prove fraudulent joinder, a defendant must show that the plaintiff's claim against the non-diverse defendant has "no reasonable basis in fact and law." *Id.* at 977 (citing *Filla v. Norfolk S. Ry. Co.*, 336 F.3d 806, 810 (8th Cir. 2003)). In other words, "if it is *clear* under governing state law that the complaint does not state a cause of action against the non-diverse defendant, the joinder is fraudulent and federal jurisdiction of the case should be retained." *Id.* at 980 (quoting *Filla*, 336 F.3d at 810).

3

On the other hand, "joinder is not fraudulent where 'there is arguably a reasonable basis for predicting that the state law might impose liability based upon the facts involved.'" *Id.* (quoting *Filla*, 336 F.3d at 811). And this standard "require[s] the defendant to do more than merely prove that the plaintiff's claim should be dismissed pursuant to a Rule 12(b)(6) motion." *Id.* (quoting *Junk v. Terminix Int'l Co.*, 628 F.3d 439, 445 (8th Cir. 2010)). If a "colorable" cause of action exists, then the joinder is not fraudulent. *Filla*, 336 F.3d at 810. The Court resolves all facts and ambiguities in the plaintiff's favor, and if the sufficiency of the complaint is questionable, the "better practice" is to remand the case and leave the question for the state court. *Id.*; *see also Wilkinson v. Shackelford*, 478 F.3d 957, 964 (8th Cir. 2007) (explaining that "[t]he relevant inquiry in analyzing fraudulent joinder . . . focuses only on whether a plaintiff 'might' have a 'colorable' claim under state law against a fellow resident, not on the artfulness of the pleadings" (internal citation omitted)).

Bobcat argues diversity jurisdiction exists because the Taylors fraudulently joined Rozier, the only non-diverse defendant, to defeat diversity jurisdiction. Doc. 20 at pp. 3–5. In support of its fraudulent-joinder argument, Bobcat argues that the Taylors' claim against Rozier "has no reasonable basis in fact and law," and argues that the Taylors' delayed service of Rozier provides evidence that the Taylors do not intend to pursue a claim against him. The Court addresses Bobcat's fraudulent-joinder arguments in turn.

### 1. State law arguably might impose liability on Rozier.

Bobcat argues that the Taylors' claim against Rozier has "no reasonable basis in fact and law" because Rozier is entitled to co-employee immunity under Mo. Rev. Stat. § 287.120.1. Doc. 20 at pp. 3–4. That statute provides:

> Every employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident or occupational disease arising out of and in the course of the employee's employment. Any employee of such employer shall not be liable for any injury or death for which compensation is

4

>recoverable under this chapter and every employer and employees of such employer shall be released from all other liability whatsoever, whether to the employee or any other person, except that an employee shall not be released from liability for injury or death if the employee engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury. The term "accident" as used in this section shall include, but not be limited to, injury or death of the employee caused by the unprovoked violence or assault against the employee by any person.

Mo. Rev. Stat. § 287.120.1. Rather than "preempt the common law claim and create a new statutory cause of action for co-employees to bring against their culpable co-workers," this section of the Missouri worker's compensation statute merely "provides immunity to co-employees and employers unless the statutory exception applies." *Brock v. Dunne*, 637 S.W.3d 22, 28 (Mo. 2021).

"The statutory immunity provided by section 287.120.1 is an affirmative defense," and while "[g]enerally, a defendant has the burden to prove affirmative defenses," here the Taylors "bear[] the burden of establishing the exception to the immunity set forth in section 287.120.1." *Id.* at 29 (citation omitted). In other words, as the Supreme Court of Missouri explained in *Brock*, Bobcat bears the burden to show that Rozier was a co-employee of Nicholas Taylor, "and, therefore, entitled to immunity under the statute." *See id.* However, the Taylors themselves allege, and Bobcat does not dispute, that Nicholas Taylor and Rozier were co-workers. Doc. 1-1 at ¶ 18; Doc. 20 at p. 3. Thus "[t]he burden . . . shifts to [the Taylors] to show [Rozier's] actions came within the statutory exception to the general rule of statutory immunity." *See Brock*, 637 S.W.3d at 29.

As the Eighth Circuit has observed, "[t]his creates a two-part analysis." *Halsey v. Townsend Corp. of Indiana*, 20 F.4th 1222, 1226 (8th Cir. 2021). First, the Court must review the facts alleged in the complaint[2] to determine whether the Taylors have a colorable claim that

---

[2] A "petition" in Missouri state court serves as the analog of a federal "complaint."

5

Rozier "engaged in an affirmative negligent act that purposefully and dangerously caused or increased the risk of injury to the injured employee so as to deny [Rozier] co-employee immunity[.]" *See id.* If so, the Court must then determine if the Taylors arguably "made allegations that otherwise establish a claim of common law negligence for a breach of a duty independent of the employer's nondelegable duty[.]" *See id.*

> a. **Rozier arguably is not entitled to statutory co-employee immunity.**

First, the Court must determine whether the Taylors have adequately pleaded facts supporting at least a colorable argument that Rozier acted with the purpose of causing or increasing the risk of injury, placing Rozier within the exception to co-employee immunity. *See Halsey*, 20 F.4th at 1226. In *Brock*, the Supreme Court of Missouri observed that "direct evidence of intent may be rare," but concluded that based on all of the evidence in the record of that case—which included a jury trial and verdict—it was "neither reasonable nor rational" to make the inference that the defendant acted with the purpose to increase the risk of injury to the plaintiff. 637 S.W.3d at 29.

The Court notes the difference in procedural posture between *Brock* and this case. In *Brock* the Supreme Court of Missouri, reviewing a circuit court's denial of a defendant's motions for directed verdict and JNOV, had to "determine whether the plaintiff presented a submissible case by offering evidence to support every element necessary for liability." *Id.* at 26–27 (citation omitted). But here, the relevant inquiry is merely "whether a plaintiff 'might' have a 'colorable' claim under state law." *Wilkinson*, 478 F.3d at 964. Further, even if the Taylors' claim is questionable, the Court should remand. *Filla*, 336 F.3d at 810. The Court finds that the Taylors have met this low bar regarding statutory co-employee immunity.

The Taylors allege in their complaint that:

> On or about October 5, 2016, Plaintiff Nicholas Taylor was working as a laborer in conjunction with Defendant Brian Rozier who was operating the aforementioned

6

> Bobcat. They were both working for their employer Tarlton Construction. Plaintiff and Defendant Rozier were working in unison doing what is known as grading a hole in what has been described as a very tight area. Plaintiff was walking behind the Bobcat and going back and forth behind the Bobcat assisting in shoveling, cutting, and grading the hole. Plaintiff and Defendant Rozier had developed a cadence where the operator would go forward and reverse at predictable times. As plaintiff was waiting for Defendant Rozier to move forward as Plaintiff expected, Defendant Rozier instead went in reverse and struck Plaintiff's right leg causing him serious injuries more fully described in Paragraph 8. Defendant Rozier could not see plaintiff. Although the Bobcat was equipped with a backup horn there was not enough time for Plaintiff to avoid being struck. The Bobcat was not equipped with a backup camera which would have allowed Defendant Rozier to see Plaintiff and prevented his injuries.

Doc. 1-1 at ¶ 18.

The Taylors further allege that "Defendant Rozier breached his duty of care by acting in one or more of the following ways which purposefully and dangerously caused or increased the risk of injury to Plaintiff:" (1) "Backing the Bobcat he was operating into Plaintiff and striking him"; (2) "Not looking behind to determine the location of Plaintiff before operating the Bobcat and moving in reverse"; (3) "Not determining that Plaintiff was in the path of the Bobcat before operating in reverse"; and (4) "[Not] [r]efusing to operate the Bobcat without it being equipped with a backup camera."  Doc. 1-1 at ¶ 21.

The Court concludes that the Taylors have alleged facts supporting a colorable argument that Rozier's affirmatively negligent act of backing the Bobcat without looking behind "purposefully and dangerously caused or increased the risk of injury" to Nicholas Taylor.  *See Halsey*, 20 F.4th at 1226.  Thus, it is at least arguable that Rozier's actions fell within the exception to statutory co-employee immunity.

### b. Rozier arguably breached a duty independent of his employer's nondelegable duty.

Second, the Court must determine whether the Taylors arguably "made allegations that otherwise establish a claim of common law negligence for a breach of a duty independent of the employer's nondelegable duty."  *See Halsey*, 20 F.4th at 1226.

7

In Missouri, the nondelegable duties an employer owes its employees include the duties: "(1) to provide a safe place to work; (2) to provide safe appliances, tools, and equipment for work; (3) to give warning of dangers of which the employee might reasonably be expected to remain in ignorance; (4) to provide a sufficient number of competent fellow employees; and (5) to promulgate and enforce rules for the conduct of employees which would make work safe." *Id.* at 1227 (citing *Peters v. Wady Indus., Inc.*, 489 S.W.3d 784, 795 (Mo. 2016)).  And "a co-employee is liable for breaching a duty separate and distinct from the employer's nondelegable duties" if the co-employee "commits a 'breach of workplace safety that was so unforeseeable to the employer as to take it outside the employer's nondelegable duty to provide a reasonably safe workplace.'"  *Id.* (citing *Connor v. Ogletree*, 542 S.W.3d 315, 324 (Mo. 2018)).

The Court finds that the Taylors have a colorable claim that Rozier's unexpected action backing up the Bobcat was "not reasonably foreseeable to the employer."  *Conner*, 542 S.W.3d at 326.  For example, the Taylors might argue that this case is like *Cain v. Humes-Deal Co.*, where the Supreme Court of Missouri held that an "employer's nondelegable duty to provide a reasonably safe (and adequately lighted) workplace did not extend to protecting an employee from injuries arising from a co-employee's unforeseeable negligence in suddenly and violently striking the ground with a shovel, causing a nail to fly into the employee's eye."  *Id.* (citing *Cain v. Humes-Deal Co.*, 49 S.W.2d 90, 94–95 (Mo. 1932)).

Or the Taylors may argue that this case is similar to *Marshall v. Kansas City*, where the Supreme Court of Missouri held that an "employer did not breach its duty to provide the plaintiff with a reasonably safe workplace because nothing under the circumstances—whether the tools, the place of work, or how the work was generally being done—suggested the employer could reasonably foresee that a co-employee would 'suddenly and unexpectedly' jerk a hose, injuring the plaintiff in the process."  *Id.* (citing *Marshall v. Kansas City*, 296 S.W.2d 1, 3 (Mo. 1956)).

The Court again emphasizes the standard of review at this stage of the proceedings. All the Taylors must show at this stage to defeat Bobcat's fraudulent-joinder charge is that they have alleged facts supporting a colorable argument that state law might impose liability on Rozier. *See Wilkinson*, 478 F.3d at 964. And if the sufficiency of the complaint is questionable, the "better practice" is to remand the case and leave the question for the state court. *Filla*, 336 F.3d at 810. Taking no position on the ultimate merits of the issue, the Court finds that the Taylors have met this low standard.

### 2. The Taylors' delayed service of Rozier does not necessarily provide evidence of fraudulent joinder.

Bobcat also argues that the Taylors could have served Rozier at his work address listed on the state court docket, "and the fact that they did not do so underscores Plaintiffs' lack of interest in actually pursuing the Missouri defendant." Doc. 20 at pp. 4–5. However, the Taylors explain that they only obtained a "good service address" a few days before filing their motion to remand on March 15, 2022, Doc. 15 at ¶ 4, and the Court notes that Missouri Supreme Court Rule 54.21 may have driven the Taylors: "[i]f . . . process cannot be served it shall be returned to the court within thirty days after the date of issue with a statement of the reason for the failure to serve the same." And, though it is unclear whether the Taylors have yet served Rozier, the Court notes that when Bobcat removed the case, the Taylors gained additional time to do so. 28 U.S.C. § 1448 provides that:

> In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court.

Rule 81(c) of the Federal Rules of Civil Procedure states that "[t]hese rules apply to a civil action after it is removed from a state court." And Rule 4(m) of the Federal Rules of Civil Procedure states:

9

> **Time Limit for Service:** If a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Courts have consistently held that the 90-day period runs from the date of removal, not the date the plaintiff filed the petition in state court. *See Whidbee v. Pierce Cnty.*, 857 F.3d 1019, 1023 (9th Cir. 2017); *Cardenas v. City of Chicago*, 646 F.3d 1001, 1004 (7th Cir. 2011); *Wallace v. Microsoft Corp.*, 596 F.3d 703, 706 (10th Cir. 2010); *Workman v. Bissessar*, 275 F. Supp. 3d 263, 269 (D.D.C. 2017); *Henok v. Chase Home Fin., LLC*, 890 F. Supp. 2d 65, 71 n.4 (D.D.C. 2012); *G.G.G. Pizza, Inc. v. Domino's Pizza, Inc.*, 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999); *Randolph v. Hendry*, 50 F. Supp. 2d 572, 579–80 (S.D.W. Va. 1999); *cf. Marshall v. Warwick*, 155 F.3d 1027, 1033 (8th Cir. 1998) (concluding that federal courts do not have authority to grant a plaintiff additional time to bring an action that expired under state law prior to removal). Thus, when Bobcat removed the case to federal court on February 18, 2022, the Taylors obtained at least another 90 days to serve Rozier under 28 U.S.C. § 1448 and Rule 4(m).

On a motion to remand, the Court must only determine whether it is at least arguable that state law might impose liability against the fraudulently joined defendant. *See Filla*, 336 F.3d at 811. Here, the Court concludes that based on the the Taylors' allegations, Missouri law might impose liability against Rozier. And the Taylors' delay in serving Rozier is not by itself evidence of fraudulent joinder. Thus, as the Taylors did not fraudulently join Rozier, the parties are not diverse, and the Court must remand for lack of subject-matter jurisdiction.

  **B.**  **Section 1441(b)(2) does not allow the Court to ignore the citizenship of an unserved, non-diverse defendant.**

Bobcat also argues that "snap removal" defeats the Taylors' motion to remand. Doc. 20 at pp. 5–6. Under this concept, courts have permitted removal when *diverse* forum defendants have not been served, finding that the forum-defendant rule of 28 U.S.C. § 1441(b)(2) only

10

applies to defendants that have been "properly joined and served . . . ."  *See, e.g.*, *Tillman v. BNSF Ry. Co.*, No. 20-cv-00178, 2021 WL 842600, at *3 (E.D. Mo. Mar. 5, 2021) (finding removal proper where diverse forum defendants had not been properly joined and served before removal).  Bobcat argues that because it removed the case before the Taylors served Rozier, the plain language of the statute makes removal proper.  Doc. 20 at p. 5.  Because the parties—whether or not served—are not diverse, the Court need not, and does not, address the propriety of so-called "snap removal."

Unlike in the cases Bobcat cites, here the lack of diversity between the Taylors and Rozier—not the forum-defendant rule—renders the Court without jurisdiction.  Doc. 16 at p. 2; Doc. 1 at pp. 2–3.  The Eighth Circuit has rejected the argument that "section 1441(b)(2) extends, by implication, to expand diversity jurisdiction and allow courts to ignore the citizenship of an unserved, non-diverse forum defendant."  *Tillman*, 2021 WL 842600, at *3 (citing *Pecherski v. Gen. Motors Corp.*, 636 F.2d 1156, 1160 (8th Cir. 1981)).

In *Pecherski*, the Eighth Circuit explained that "[s]ection 1441(b) does not qualify the requirement of complete diversity; rather, it further limits jurisdiction based on diversity of citizenship by requiring that no joined and served defendants be a citizen of the state in which the action was initially brought."  636 F.2d at 1160 (citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 540 (1939)); *see also Tillman*, 2021 WL 842600, at *3 (citing *Pecherski*, 636 F.2d at 1160); Wright & Miller, 14C Fed. Prac. & Proc. Juris. § 3723 (Rev. 4th ed.) (stating that Section 1441(b)(2) "implies that a diverse but resident defendant who has not been served may be ignored in determining removability").

Because the Court concludes that the Taylors did not fraudulently join Defendant Rozier, the Court may not ignore Rozier's diversity-defeating citizenship, even though the Taylors have yet to serve him.  *See Pecherski*, 636 F.2d at 1160.  The Court therefore lacks subject matter jurisdiction and need not address the Taylors' additional arguments, namely:  (1) that 28 U.S.C.

11

§ 1445(c) prevents removal because the case arises under Missouri's worker's compensation law; and (2) that Bobcat has not met its burden to show that the amount in controversy exceeds the jurisdictional minimum. Doc. 16 at pp. 6–9.

### IV. Conclusion

Because the Court lacks subject matter jurisdiction, the Court grants the Taylors' [15] Motion to Remand and remands this case to the state court. *See* 28 U.S.C. § 1447(c). Pursuant to 28 U.S.C. § 1447(c), the Court directs the Clerk of Court to mail a certified copy of this order of remand to the clerk of the state court.

So Ordered this 24th day of May 2022.

_SL R. CL_
STEPHEN R. CLARK
UNITED STATES DISTRICT JUDGE